THE STATE, JOHN COAR ET AL., PROSECUTORS, v. THE MAYOR AND ALDERMEN OF JERSEY CITY.

1. The subject of sewerage is of the utmost importance to, and as affecting the interests of the city, and the action of the board in exercising the powers conferred should not be left to inference, but should be by distinct resolution, and submitted to the approval of the mayor

State, Coar et al. pros., v. Mayor and Aldermen of Jersey City.

2. It is necessary, according to the spirit of the charter, that a plan for the construction of the particular sewer applied for should be made out and officially adopted by the board, before any proceedings can lawfully be taken in its construction. When a notice is required and its contents are not prescribed, it should, in itself, be sufficiently descriptive to fairly inform those interested, of the real improvement intended.

This writ brings up the proceedings of the board of public works in Jersey City, for the construction of a sewer on Grand street—the work not being yet commenced at the suing out of the writ.

The case was argued before Justices BEDLE, DALRIMPLE, and SCUDDER.

For the prosecutors, *S. B. Ransom.*

For the city, *J. Dixon, Jr.*

The opinion of the court was delivered by

BEDLE, J. The writ in this case was properly directed to the board of public works, as that board has the custody of the proceedings sought to be reviewed, but it should have been entitled against the mayor and aldermen of Jersey City. The endorsement was against the board. In this respect, it is amendable, and is accordingly amended. The real party defendant is the city, and for that reason, as well as by the fair spirit and meaning of section thirty-two of the city charter, (*Laws of* 1870, *p.* 1111,) the writ should be entitled against the corporation. This brings us to the merits. Section fifty-nine of the charter, (*Laws of* 1871 *p.* 1122,) contemplates the construction of a sewer according to a plan to be adopted by the board. I use the word plan now, without defining its accurate meaning in that section, and only intending to say that whatever the plan may be, the board is obliged to take official action upon it and to adopt it, subject, of course to revision or amendment, according to the language of that section. The subject of sewers is of the utmost im-

portance to, and as affecting the interests of the city, and the action of the board in exercising the power conferred, should not be left to inference, but should be by distinct resolution, and submitted to the appoval of the mayor. This is the fair meaning of section fifty-nine and ninety-five of the charter. The plan in this case was made by the chief engineer of the city, May 8th, 1871, and covers Grand street, from Mill creek to Grove street, and the immediate vicinity,. giving them sewers in Grand street and the laterals thereto, in the vicinity. The application was presented May 16th, 1871, but is dated May 2d, 1871, and asks that *a sewer* be constructed according to the plan of sewerage in Jersey City, through Grand street, from the centre of Mill creek to Grove street, in order to connect with the sewer already laid. On the strength of that application the board published a notice describing the improvement in the language of the application, and fixing a time and a place for the parties interested to be heard. After hearing those who appeared, the board, on the 20th day of June, 1871, passed a resolution, which was approved by the mayor, that a sewer be constructed in accordance with the plan of sewerage made by John P. Culver, chief engineer, and by the board. This is the first recognition by the board of the plan, excepting only that on the 16th day of May, 1871, the committee on streets, in their report upon the application, assumed that the sewer had been petitioned for, to be constructed according to the Culver plan. The Culver plan, as we must conclude from the return, had not been adopted when the application was actually presented to the board, and had not been made at the time the application bears date. Neither had the plan been adopted when the notice was published, and no official recognition of it by the board had taken place until the passage of the resolution to construct the sewer. By the same section (fifty-nine) each main sewer and each lateral, and the size thereof, shall be designated on the plan, and all the sewers to be constructed shall be in accordance with such plan ; further, the proceedings for the construction shall correspond, as far as practica—

ble, with the proceedings for paving streets, subject to certain provisions. Section forty-seven requires that for paving streets, an application, in writing, shall be made to the board for the particular improvement desired. All this shows that a plan is a necessity on which to base proceedings to construct a sewer. If the application is intended to refer to the Culver plan, that plan had not been acted upon by the board when the petition was presented. It is not clear, however, that it meant the Culver plan. The charter of 1871, as well as previous public legislation in relation to Jersey City, together with the inferences from the evidence, show that there did exist a plan of sewerage for parts of Jersey City when the charter of 1871 was passed, and it may well be questioned whether the Culver plan was meant; but whatever the truth may be as to that, it is sufficient that when these proceedings now brought before us were commenced, the Culver plan had not been officially adopted by the board, and for that reason the proceedings to construct the sewer were premature and should be set aside.

The facts stated in connection with the following also show that the notice, as advertised, was insufficient, even if the Culver plan had been adopted. The plan is for twin sewers in Grand street, or, in the language of the witness, Culver, (chief engineer,) "*two sewers side by side.*" He also says that one sewer would probably be enough for the present sewerage of that part of Grand street, but not large enough for the future. The circles of the sewers are distinct, but they have a common partition wall. The diameter of each is at least four feet, and more in some places. The notice was liable to mislead the land-owner, as it used only the word sewer, without intimating in any way that more than a single sewer was to be built. Certainly he would not have supposed from the notice that a double sewer was to be constructed. He might have been satisfied to allow the board to build the ordinary main sewer, thinking, naturally, the notice did not require more, without making any objection, whereas if he had known the full extent of the work intended,

he might have interposed his objections.    The notice, if it
did not mislead, failed to attract the attention to what was
the real nature of the project.    The reference in it to the plan
does not supply the defect, for the notice, in itself, should con-
tain sufficient to apprise the parties interested of the general
nature of the improvement.    Those interested are not obliged
to spend their time, and, perhaps, annoy officials, or be them-
selves worse annoyed, in order to find out from the files of
offices what the substantial nature of the improvement may
be, unless the legislature has authorized some kind of a notice
which may result in that.    Where a notice is required, and
its contents are not prescribed, it should in itself, be sufficiently
descriptive to fairly inform those interested of the real im-
provement intended.    The court has heretofore been very
careful for the sufficiency of notices where private interests are
to be affected.    *State* v. *Jersey City*, 2 *Vroom* 361.

There is a remaining question, whether the plan of Culver
is such a plan as is meant by section fifty-nine.    The part
affecting it reads as follows :    " That the said board of public
works shall have power to establish, revise, and amend a
plan of sewerage and drainage for all the streets that now are
or may be hereafter opened in Jersey City, in which public
sewers have not been constructed, and on such plan shall  be
designated each main sewer and each lateral sewer, and the
size thereof, and all the sewers to be constructed shall be in
accordance with such plan."    It is difficult to construe this
language.    It is urged by the prosecutors that a general plan
for all the streets in which sewers have not been constructed,
whether opened or to be opened, must be adopted by the
board before any other sewers can be built.    Such a construc-
tion, it seems to me, is impracticable, and would likely
nullify that part of the section.    Jersey City now embraces
a large territory, and different modes of sewering may prob-
ably be required in different localities ; one locality may also
have no relation to another in its drainage.    Besides, the
clause only applies to streets in which no sewers have been
constructed, and these may be so separated as that there can

be no connection. Streets that may be hereafter opened are also included, as well as those already opened. How any general plan of sewerage, with each main sewer and lateral, and the size thereof designated thereon, can be established so as to be of any practical use, it is difficult to understand, and as difficult to believe that the legislature so intended. The intention of the clause is not to oblige the board to adopt one general plan before any sewer can be built, but to require that every sewer shall be constructed according to a plan previously adopted, and on which it shall be designated. Whether the sewer is a main or a lateral, it must be according to an established plan, but the board has the discretion as to the scope of the plan, subject only to this, that every plan shall comprehend the main and all the laterals that may connect with it. The minimum limit of the plan must not be less than that. This is a distributive construction, and gives practical effect to the clause, leaving, as it necessarily must from the language, a large discretion in the board as to the extent that the particular plan may cover. Under this view the court cannot say that the Culver plan is not, in its scope, a compliance with the act.

For the reasons before stated, all the proceedings brought up by this writ must be set aside, except only that the mere plan is left undisturbed for such action as the board may take thereon.

CITED *in Lower Chatham Drainage Case, post p.* 509; *State, Hoxsey, pros.,* v. *Paterson,* 10 *Vr.* 493.